IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GUILDMASTER, INC., | ) | Case No. 12-62234 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| GUILDMASTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 12-6068 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER GRANTING DEFENDANT UNITED STATES OF AMERICA'S
MOTION TO DISMISS ADVERSARY PROCEEDING</u>

Debtor GuildMaster, Inc. filed this adversary proceeding against the United

States of  America, seeking turnover of electric lamps which were seized by the

Government because they had counterfeit Underwriters Laboratories stickers on them.

The Government objects.   Underwriters Laboratories and Guaranty Bank have

intervened, each asserting an interest in the outcome of this case.  For the reasons that

follow, the Court finds that, because the relative priorities of the parties' interests in

the seized lamps necessarily involves the interpretation and application of criminal

statutes which are directly at issue in a pending criminal matter, this Court lacks

jurisdiction to decide such priorities.  The United States' Motion to Dismiss is,

therefore, GRANTED.

*Factual Background*[1]

GuildMaster, located in Springfield, Missouri, designs, imports, markets, and sells furniture, lighting, accessories and wall art in several major markets in the United States. GuildMaster manufactures its products in China through its subsidiary Westway Enterprises, Ltd., a Hong Kong corporation ("Westway") and in Indonesia through its subsidiary P.T. Niaga Merapi, an Indonesia corporation ("Merapi"). Among the items Westway manufactures through Westway's mainland Chinese subsidiary, Dongguan Yangming Hardware Crafts Limited ("Dongguan"), are electric lamps sold by GuildMaster in the United States.

Underwriters Laboratories ("UL") is an independent product safety certification organization accredited for safety testing by the Occupational Safety and Health Administration ("OSHA"). If a product bears the UL mark, it is an indication to the public that it meets certain safety requirements.

According to the Government, Guildmaster maintained a contract with UL and was authorized to affix UL labels to its products from 1990 through 2007. In 2007, UL terminated its contract with Guildmaster for failure to pay outstanding invoices.

---

[1] The following factual background is gleaned from the parties' pleadings; they are not factual findings based on evidence.

According to the Government, there has never been a contract between UL and Dongguan.

Between November 2010 and December 2011, GuildMaster purchased more than 8,000 lamps from Westway, which purchased the lamps from Dongguan, the manufacturer, and which were shipped to GuildMaster for sale in the United States.

GuildMaster operates under a line of credit from Guaranty Bank. The line of credit is secured by a security interest in all of GuildMaster's personal property, including but not limited to its inventory, equipment, accounts, and general intangibles.

According to the Government, sometime in December of 2011, the United States Customs and Border Patrol ("CBP") discovered lamps imported by GuildMaster that bore counterfeit UL labels. Between January 10, 2012, and March 2012, CBP seized as many as eleven shipments of lamps. In addition, in February of 2012, the Government alleges that CBP discovered that Dongguan was attaching UL labels which were not counterfeit, but had been contractually provided to another Chinese company for use. CBP executed three seizures in February 2012, which included 567 lamps bearing genuine, but unauthorized, UL labels. GuildMaster asserts that the stickers containing the counterfeit mark were affixed by Dongguan, and not by Westway or GuildMaster.

In addition, the United States District Court for the Western District of Missouri issued two Search and Seizure Warrants directing law enforcement officers to search GuildMaster's facilities in Springfield, Missouri.  As a result of those warrants, CBP seized a number of items and documents, as well as an additional number of lamps from GuildMaster's facility in Springfield, Missouri.

Collectively, more than 5,000 of GuildMaster's lamps were seized by CBP in early 2012.  GuildMaster says it paid Westway approximately $450,000 for the lamps. It asserts that the retail value of those lamps is $900,000.  GuildMaster and Guaranty Bank agree that its security interest is properly perfected and both assert that it covers the seized lamps.

For the next several months, the Government continued to conduct a criminal investigation relating to GuildMaster's lamps.  As that investigation was pending, the parties attempted to negotiate a global settlement which would have included the return of the seized lamps.   According to the Government, when it became clear that the parties had reached an impasse, GuildMaster declared its intention to file bankruptcy.  Prior to the bankruptcy filing, however, on December 12, 2012 the grand jury indicted GuildMaster under 18 U.S.C. § 2320(a)(1) for trafficking in counterfeit goods.  The Government also seeks forfeiture of the lamps under 18 U.S.C. § 2323(b).

GuildMaster filed a Chapter 11 bankruptcy case the day after the indictment

4

was handed down, December 13, 2012.  That same day, GuildMaster filed this adversary proceeding seeking turnover of the seized lamps from the Government pursuant to 11 U.S.C. § 542(a).

At the outset, the Government concedes that some of the lamps it seized did not bear an offending sticker and states that it has returned or is in the process of returning all of those lamps to GuildMaster.[2]  We are now dealing with only the lamps that are still alleged to have violated the law.

The Government requests that this adversary proceeding be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure[3] on the ground that the District Court, and not this Court, has jurisdiction over the seized lamps pursuant to 21 U.S.C. § 853(k)(2); and under Rule 12(b)(6) on the ground that the Complaint fails to state a claim upon which relief can be granted.  Both grounds are based on the premise that a bankruptcy court should not intervene in a pending criminal matter.  GuildMaster contends that the lamps are an asset of its bankruptcy estate and that this Court should determine if they should be forfeited.  Therefore, the issue is whether the Bankruptcy Court or the District Court should determine whether a debtor's property is subject to

---

[2]  The Government has already returned the 65 lamps it earlier conceded lacked the sticker, plus an additional 26 lamps it later discovered did not have the sticker.  The Government is also returning the 106 "stacked river stone" lamps which bore a UL sticker issued to another manufacturer.

[3]  Fed. R. Civ. P. 12 is made applicable here by Fed. R. Bankr. P. 7012.

forfeiture.  Since forfeiture would arise upon conviction under a criminal statute, I

hold that the Bankruptcy Court lacks jurisdiction to determine whether GuildMaster's

assets are subject to forfeiture.

<u>*Standard for Dismissal Under Rule 12(b)(1)*</u>

"For the Court to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1), the complaint must be successfully challenged on its face or on the factual

truthfulness of its averments."[4]  If the complaint is challenged on its face, the factual

claims concerning jurisdiction are presumed to be true.[5]  The motion to dismiss will

be successful if the plaintiff fails to allege an element necessary for subject matter

jurisdiction.[6]  Courts have the authority to consider matters outside the pleadings on

a motion challenging subject matter jurisdiction under Rule 12(b)(1).[7]  The plaintiff

has the burden to prove jurisdiction exists.[8]

---

[4] *Swensen v. U.S.* (*In re Swensen*), 438 B.R. 195, 196 (Bankr. N.D. Iowa 2010) (*citing Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993)).

[5] *Titus v. Sullivan*, 4 F.3d at 593.

[6] *Id.*

[7] *Wayne Industrial Holdings v. Goro* (*In re Wayne Engineering Corp.*), 2008 WL 1776408 at *3 (Bankr. N.D. Iowa April 17, 2008) (not reported) (*citing Deuser v. Vecera*, 139 F.3d 1190, 1192 [n.3] (8th Cir.1998)); *see also Utiss v. CitiFinancial Mtg. Co.*, 2009 WL 602088 at *1 (E.D. Mo. March 5, 2009) (not reported) ("Unlike analysis under Rule 12(b)(6), Rule 12(b)(1) allows the Court to consider matters outside of the pleadings.").

[8] *In re Swensen*, 438 B.R. at 196 (*citing Osborn v. United States*, 918 F.2d 724, 730 (8th Cir.1990)).

[H]ere the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.[9]

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[10]

### *Dismissal Under Rule 12(b)(6)*

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[11] This statement does not require detailed factual allegations so long as it "give[s] the defendant fair notice of what the ... claim is and the grounds upon which it rests."[12] However, a court will dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted if, after taking all facts alleged in the complaint as true, the complaint fails to state a

---

[9] *Utiss v. CitiFinancial*, 2009 WL 602088 at *1 (*quoting Osborn v. United States*, 918 F.2d 724, 730 (8th Cir.1990)).

[10] Fed. R. Civ. P. 12(h)(3).

[11] *Middlebrooks v. Interstate Credit Control, Inc.*, 391 B.R. 434, 436 (B.A.P. 8th Cir. 2008).

[12] *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

claim to relief that is plausible on its face.[13]  When considering a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings."[14]

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.[15]

"All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists."[16]

## *Discussion*

As stated, the threshold issue in these proceedings is which court – this Bankruptcy Court or the District Court in the criminal matter – has control over the

---

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009); *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009); *Middlebrooks v. Interstate Credit Control*, 391 B.R. at 436 (the court should dismiss a complaint if, after taking all facts alleged in the complaint as true, those facts fail to raise a right to relief above the speculative level).

[14] *JPMorgan Chase Bank, N.A. v. Johnson*, 470 B.R. 829, 834 (E.D. Ark. 2012) (citation omitted).

[15] *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (citations omitted).

[16] 5B C. Wright and A. Miller, *Fed. Prac. & Proc. Civ.* § 1357 (3d ed.) (citations omitted).

seized lamps.   The criminal statutes under which the Government is pursuing GuildMaster and the lamps are summarized as follows:

18 U.S.C. § 2320(a)(1), relating to trafficking in counterfeit goods or services, provides that "[w]hoever intentionally . . . traffics in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services, . . . shall be punished as provided in subsection (b)."   Subsection (b) of § 2320 provides for various penalties for persons who commit an offense under subsection (a), including specified fines and prison sentences.

18 U.S.C. § 2320(c), relating to forfeiture and destruction of property, provides that "[f]orfeiture, destruction, and restitution relating to this section shall be subject to section 2323, to the extent provided in that section, in addition to any other similar remedies provided by law."

18 U.S.C. § 2323(b), relating to criminal forfeiture, provides that "[t]he court, in imposing sentence on a person convicted of an offense under section . . . 2320 . . . . shall order, in addition to any other sentence imposed, that the person forfeit to the United States Government any property subject to forfeiture under subsection (a) for that offense."   Subsection (a) of § 2323, which relates to civil forfeiture, provides for forfeiture to the Government of any article, the making or trafficking of which is prohibited under § 2320.

9

Section 2320(b)(2), regarding the procedures for criminal forfeiture, provides:

**(A) In general**. – The forfeiture of property under paragraph (1), including any seizure and disposition of the property and any related judicial or administrative proceeding, shall be governed by the procedures set forth in section 413 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853), other than subsection (d) of that section.

**(B) Destruction**. – At the conclusion of the forfeiture proceedings, the court, unless otherwise requested by an agency of the United States shall order that any –

> (i) forfeited article or component of an article bearing or consisting of a counterfeit mark be destroyed or otherwise disposed of according to law; and

> (ii) infringing items or other property described in subsection (a)(1)(A) and forfeited under paragraph (1) of this subsection be destroyed or otherwise disposed of according to law.

Further, as relevant here, under 21 U.S.C. § 853(k), a party seeking to assert an interest in assets subject to forfeiture can neither intervene in the criminal proceedings nor commence a separate action against the United States concerning the asserted interest:

(k) Bar on intervention

> Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may –

> > (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or

10

> (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

However, 21 U.S.C. § 853(n) provides a mechanism, known as an "ancillary proceeding," for third parties asserting rights in the forfeited property to protect their interests. That section provides, in relevant part:

> (2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

> * * *

> (6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that –

>> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

>> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

11

the court shall amend the order of forfeiture in accordance with its determination.[17]

GuildMaster asserts that, the above criminal forfeiture statutes and prohibition against intervention notwithstanding, this Court has exclusive jurisdiction over property of the estate by virtue of 28 U.S.C. § 1334(e), which provides that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . of all property wherever located, of the debtor as of the commencement of such case, and of property of the estate. . . ." Section 541 of the Bankruptcy Code provides that the commencement of a bankruptcy case creates an estate which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held."[18] Further, § 542 of the Bankruptcy Code, pursuant to which GuildMaster seeks possession of the lamps, provides:

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of

---

[17] 18 U.S.C. § 853(n). Rule 41(g) of the Federal Rules of Criminal Procedure also provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return" by filing a motion in the District Court where the property was seized.

[18] 11 U.S.C. § 541(a)(1).

such property, unless such property is of inconsequential value or benefit to the estate.[19]

Technically, and as GuildMaster acknowledges, § 1334(e) gives United States *district courts* exclusive jurisdiction over property of the estate, which jurisdiction can be referred by district courts to bankruptcy courts.[20]   In any event, while this Court does have jurisdiction over property of GuildMaster's bankruptcy estate by virtue of this District Court's referral of jurisdiction, federal district courts have exclusive jurisdiction over criminal cases, including criminal forfeitures, under 18 U.S.C. 3231,[21] and over federal forfeiture cases under 28 U.S.C. § 1355(a).[22]   Further, property taken or detained for forfeiture is subject only to the orders of the court having jurisdiction.[23]   Even when bankruptcy cases are referred by the district court

---

[19]   11 U.S.C. § 542(a).

[20]   28 U.S.C. § 157(a).

[21]   18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.").

[22]   28 U.S.C. § 1355(a) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.").

[23]   18 U.S.C. § 981(c) ("Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the Attorney General, the Secretary of the Treasury, or the Postal Service, as the case may be, subject only to the orders and decrees of the court or the official having jurisdiction thereof. . . .").

to the bankruptcy court, such referral relates only to proceedings arising under, arising in, or related to Title 11.[24] Clearly, this Court lacks jurisdiction over any aspect of the criminal matter.

Nevertheless, GuildMaster asserts that this Court does have jurisdiction over the seized lamps as property of the estate. GuildMaster summarizes its argument as follows: 21 U.S.C. § 853(k), quoted above, bars a legal or equitable action against the Government if the property seized is *properly* "subject to forfeiture" upon conviction. In addition, GuildMaster asserts, the bar to such an action is limited to a challenge by a third party, and does not prohibit a challenge by the property owner.

At the outset, although GuildMaster asserts that there is no dispute that GuildMaster owns the lamps and that the lamps are property of the bankruptcy estate under § 541 of the Bankruptcy Code, the Government does dispute that the lamps themselves are property of the estate, asserting that title to forfeitable property vests in the United States at the point in time when the underlying crime is committed.[25]

---

[24] 28 U.S.C. §§ 157(a) and 1334.

[25] *Citing* 18 U.S.C. § 981(f) ("All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section."); 21 U.S.C. § 881(h) ("All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section."); 21 U.S.C. § 853(c) ("All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. . . ."). *See also United States v. Huntington Nat'l Bank*, 682 F.3d 429 (6th Cir. 2012) ("[A]fter the commission of the criminal acts, title to the forfeitable property, by operation of the relation-back clause,

Since the alleged crimes were committed in 2011, the Government asserts that, under

a theory of *in custodia legis* (in the "custody of the law"), the bankruptcy estate's title

to the lamps is, at best, a contingent right to be determined at the conclusion of the

criminal proceeding.[26]

GuildMaster next points to 18 U.S.C. § 2323(b)(2), which provides for the

destruction of any "forfeited article *or* component of an article bearing or consisting

of a counterfeit mark,"[27] and asserts that, because the lamps are subject to Guaranty's

perfected security interest (which the criminal court must acknowledge), it is only the

offending stickers – not the lamps themselves – that are properly subject to forfeiture.

GuildMaster asserts that the stickers should be removed and the lamps themselves

should be brought into the estate to satisfy Guaranty Bank's secured claim.

In addition, GuildMaster asserts that the indictment was made at the behest of

UL, and that UL is the party insisting that the lamps themselves be destroyed, rather

than simply removing the offending stickers. GuildMaster asserts that the Bankruptcy

---

actually belongs to the government.") (citation omitted).

[26] *See* 21 U.S.C. § 853(c) ("A`` right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section."); *Diversified Fiber Prods., Inc. v. U.S.* (*In re Thena, Inc.*), 190 B.R. 407, 412 (D. Ore. 1995) (holding that, although the debtor had some interest in seized property, the interest was defeasible upon conviction; the debtor essentially held legal title to property in constructive trust which was not included in its bankruptcy estate under §§ 363 or 541).

[27] Emphasis added.

Code does not permit the Government to request destruction of the entirety of the lamps in the criminal action, when doing so only advances the interest of UL and no legitimate public health or safety reason exists to destroy the lamps.  The Government denies this allegation and says that it brought the indictment because "GuildMaster broke the law."  It further states that the public interest in prosecuting cases of unlawful importation of counterfeit goods is to ensure companies such as GuildMaster do not violate the law to obtain a competitive advantage vis-a-vis law-abiding companies.  Further, by statute, UL is defined as a victim of this offense, since UL owns the certification mark that was counterfeited.[28]  Finally, the Government argues that it has a duty to consult with UL, as it does with any other victim in a criminal case,[29] and that it is statutorily prohibited from releasing the lamps to GuildMaster over UL's objection.

All of these issues relating to the relative rights of the parties in the lamps – namely, whether the lamps are property of the bankruptcy estate in light of the criminal statutes purporting to vest retroactive title in the Government; whether any of the lamps were or were not properly seized; whether Guaranty's security interest bars destruction of the lamps;  and whether UL has any legitimate interest in what

---

[28]  *Citing* 18 U.S.C. § 2320(e).

[29]  *Citing* 18 U.S.C. § 3771(a)(5).

16

happens to the lamps  – are all issues which necessarily involve the interpretation and

application of the criminal statutes, a task that is outside of this Court's jurisdiction

while the criminal action remains pending.  As the Government states, bankruptcy is

not an alternative forum for deciding criminal matters.  In fact, criminal forfeiture

proceedings fall within the police power exception to the automatic stay.[30]

GuildMaster next asserts that 21 U.S.C. § 853(k), quoted above, only bars

challenges by "third parties" and that this challenge is by GuildMaster – the criminal

defendant itself –  not a third party.  First, I have already determined that this Court

lacks jurisdiction over the lamps, even without considering § 853(k)'s additional

prohibitions.  Further, the interpretation of § 853(k) again requires this Court to

interject itself into the criminal matter by interpreting criminal statutes at play there.

Moreover, while I do not have jurisdiction to interpret the criminal statutes

when doing so could undermine a pending criminal matter,  I question GuildMaster's

argument that § 853(k)'s prohibition against bringing a lawsuit against the United

States is limited to "third parties" other than the criminal defendant itself.  Section

853(k) provides that "no party claiming an interest in property subject to forfeiture"

---

[30] *See, e.g., In re James*, 940 F.2d 46, 50 (3d Cir. 1991) ("[A] civil forfeiture action
proceeding is an exception to the automatic stay under the 'police power' exception of section
362(b)(4)."); *Smith v. State of Alabama* (*In re Smith*), 176 B.R. 221 (Bankr. N.D. Ala 1995)
(holding that state court forfeiture proceeding came within police power exception to the
automatic stay).

can bring a suit against the United States.  The statute itself makes no mention of "third parties."  As the court in *In re Global Vending* has held, in enacting § 853(k), "Congress used clear and unambiguous language" to "bar[] all actions against the United States," including, the court held, actions for turnover in bankruptcy cases.[31] "Section 853(k) 'imposes an absolute bar on *all* suits claiming an interest in forfeitable property unless the action is brought within the confines of an ancillary proceeding'" under § 853(n).[32]  While, as GuildMaster asserts, the legislative history does refer to "third parties" specifically, I found nothing in the history saying § 853(k) was intended to be limited to third parties to the exclusion of the criminal defendant itself.

As GuildMaster points out, in *In re Global Vending*, it was the trustee in a Chapter 7 bankruptcy case, and not a debtor-in-possession, who was barred from filing a suit against the United States challenging the seizure and forfeiture of accounts and seeking turnover.  GuildMaster asserts that the trustee was barred because he was

---

[31] *Osborne v. U.S.* (*In re Global Vending*), 2005 WL 2451763 at *2 (Bankr. S.D. Fla. June 1, 2005).

[32] *Id.* (*quoting In re The American Basketball League, Inc.*, 317 B.R. 121, 129 (Bankr. N.D. Cal.2004) (emphasis in original).  The Court in *Global Vending* also cited *In re Jose I. Macia*, Case No. 97–16383–BKC–AJC (Bankr. S.D. Fla.1998), and said:  "In *Macia*, United States Bankruptcy Court Judge A. Jay Cristol held that "the [Chapter 7] Trustee was not entitled to the requested turnover of the seized assets as it would result in interference with the lawful orders of the [district court judge] in the pending criminal proceedings in contravention of the clear statutory language found at 21 U.S.C. § 853(k)."

a "third party," not the criminal defendant itself.  I do not see that as being distinguishable in this context.  A chapter 7 trustee steps into the shoes of a debtor and has the same rights, powers, and duties of a debtor-in-possession.[33]  Among those duties are the recovery of assets for the benefit of creditors, which is what both the trustee in *Global Vending* and GuildMaster here are attempting to do.  Indeed, GuildMaster is clearly attempting to take possession of the lamps at least in large part, if not entirely, for Guaranty Bank's benefit here.  Certainly, Congress could not have intended to permit a "third party" to avoid § 853(k)'s prohibitions  by having the criminal defendant itself assert its claim on its behalf.

Nor could Congress have intended to allow a criminal defendant to bring an adversary proceeding to recover seized property:  such a reading would allow a criminal defendant to make an end-run around the forfeiture statutes by simply filing a bankruptcy case.  Congress could not have intended that result.

With all that said, bankruptcy courts are indeed charged with protecting creditors' rights, such as Guaranty Bank's interests in collateral, in accordance with the Bankruptcy Code.  However, Guaranty Bank is not without remedy.  As stated above, 21 U.S.C. § 853(n) expressly recognizes the rights of third parties and provides a mechanism for such parties to assert their rights in an ancillary proceeding.

---

[33] *See* 11 U.S.C. § 1107(a).

As the court in *Global Vending* stated, § 853(n) provides the exclusive means for third parties to assert an interest in seized property.[34]  If Guaranty Bank asserts rights in the lamps, the appropriate forum for it to seek protection of those rights is through the ancillary proceeding in the criminal court.

GuildMaster points to *United States v. Huntington Nat'l Bank*,[35] which held that, although all right, title, and interest in forfeitable property actually belongs to the government after the commission of the criminal acts by operation of the relation-back clause in 21 U.S.C. § 853(c), Congress carved out exceptions to this relation-back clause in 21 U.S.C. § 853(n) to protect the rights of certain innocent third parties, such as those asserting a security interest in the seized property.[36]  The Court in that case held that a secured creditor was entitled to protections under those statutes.  Again, the Government does not appear to disagree that Guaranty Bank is entitled to assert its interest in the lamps; however, that determination must be made in the criminal forfeiture proceeding, as it was in *Huntington*.  I agree.

In sum, as discussed above, all of the relief sought by GuildMaster (and

---

[34]  *In re Global Vending*, 2005 WL 2451763 at *3.

[35]  682 F.3d 429 (6th Cir. 2012).

[36]  *U.S. v. Huntington*, 682 F.3d at 433, 436 (holding that a secured creditor qualified as a bona fide purchaser for value entitled to assert its claim to forfeited goods under § 853(n)(6)(B)) (citations omitted).

Guaranty Bank as intervenor) here necessarily involve the interpretation and application of the criminal statutes at issue in a *pending criminal matter*. This is important because of the real potential for inconsistent rulings between the two courts or, worse, that a ruling here could undermine the Government's authority to enforce this country's criminal laws. As a result, I find that this Court lacks jurisdiction to grant the relief requested in GuildMaster's Complaint for turnover and that this case must, therefore, be dismissed pursuant to Rule 12(b)(1). To the extent that this Court has jurisdiction over the lamps, I hold that exercising such jurisdiction would improperly interfere with the District Court's jurisdiction over the lamps in the pending criminal matter and, therefore, the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim to relief that this Court can properly grant. GuildMaster and Guaranty Bank are fully entitled to seek to protect their interests in the District Court. If the criminal matter is dismissed or GuildMaster is acquitted, or if the District Court orders the return of the lamps, then the parties are free to come back to this Court if further relief is needed.

ACCORDINGLY, the Motion to Dismiss filed by the United States of America is GRANTED, and this adversary proceeding is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

21

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 3/29/2013